# United States Court of Appeals for the Fifth Circuit

————————

No. 22-50212

————————

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

GREG ABBOTT, *in his official capacity as Governor of the State of Texas*,

*Defendant—Appellant*,

———————————————————

ANNUNCIATION HOUSE; ANGRY TIAS AND ABUELAS OF THE RIO GRANDE VALLEY; JENNIFER HARBURY; FIEL HOUSTON,

*Plaintiffs—Appellees*,

*versus*

GREG ABBOTT, *in his official capacity as Governor of the State of Texas*,

*Defendant—Appellant*.

————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC Nos. 3:21-CV-173, 3:21-CV-178

————————————————

Before STEWART, WILLETT, and OLDHAM, *Circuit Judges*.

United States Court of Appeals
Fifth Circuit

**FILED**

October 27, 2023

Lyle W. Cayce
Clerk

Andrew S. Oldham, *Circuit Judge*:

In July 2021, Texas Governor Greg Abbott issued an executive order that prohibited private individuals from providing ground transportation to migrants who were previously detained or subject to expulsion. The United States brought a lawsuit against Governor Abbott and the State of Texas, arguing that the executive order was preempted by federal law. Three nonprofit organizations and a retired lawyer also brought a § 1983 suit against the Governor and the Director of the Texas Department of Public Safety ("DPS"). The defendants moved to dismiss the suit brought by the private plaintiffs, arguing in part that the plaintiffs lacked standing and the suit against the Governor was barred by sovereign immunity. The district court rejected these arguments, and Governor Abbott appealed.

We agree with the Governor that sovereign immunity bars the lawsuit brought by the private plaintiffs. We reverse and remand with instructions to dismiss the suit against the Governor.

I.

On July 28, 2021, Texas Governor Greg Abbott issued Executive Order GA-37 pursuant to his authority under the Texas Disaster Act of 1975. The Disaster Act empowers the Governor to declare a state of disaster and gives him certain attendant powers. For example, the Governor has the authority to "meet[] . . . the dangers to the state and people presented by disasters," Tex. Gov't Code § 418.011(1), to "issue executive orders," *id.* § 418.012, and to "control ingress and egress to and from a disaster area and the movement of persons . . . in the area," *id.* § 418.018(c).

The Governor issued GA-37 pursuant to two disaster declarations. The first was the COVID-19 disaster declaration issued in March 2020. The second was the border-security disaster declaration issued in May 2021 in

No. 22-50212

response to the influx of people illegally crossing the Texas-Mexico border.[1] Paragraph 1 of the Executive Order prohibits private citizens from transporting migrants "who have been detained by [U.S. Customs and Border Protection] for crossing the border illegally or who would have been subject to expulsion under [federal law]." TEX. EXEC. ORDER GA-37, at 2. Paragraphs 2 and 3 charge DPS with enforcement power "to stop any vehicle upon reasonable suspicion of a violation," "to reroute such a vehicle back to its point of origin or a port of entry if a violation is confirmed," and "to impound a vehicle that is being used to transport migrants in violation of paragraph 1, or that refuses to be rerouted." *Ibid*.

The United States filed a suit against Governor Abbott and the State of Texas and obtained a temporary restraining order. A group of private plaintiffs also filed suit against Governor Abbott and DPS Director McCraw under 42 U.S.C. § 1983, alleging that GA-37 violated the Supremacy Clause and the Fourth and Fourteenth Amendments. The district court consolidated the two cases for pretrial purposes. After consolidation, the court granted a preliminary injunction, preventing "defendants, their agents, officers, and employees, and all other persons and entities in active concert or participation with them . . . from taking any action to enforce the executive order." ROA.969. To date, the Executive Order has yet to be enforced by DPS or any arm of the State.

Governor Abbott filed two motions to dismiss: one against the federal government's suit and one with Director McCraw against the private

---

[1] While the COVID-19 disaster declaration has since expired, the border-security disaster declaration remains in effect. The parties agree that the case is not moot because GA-37 remains in effect pursuant to the latter declaration. As the Governor pointed out in his supplemental brief, "it is unclear whether the Governor even *could* take steps to modify GA-37, given the preliminary injunction that remains in effect against him." Tan Br. 1.

No. 22-50212

plaintiffs' suit. The district court responded with two separate orders. It denied the motion to dismiss the federal government's suit in one; and it granted in part and denied in part the motion to dismiss the private plaintiffs' suit in the other. In the latter order, the district court dismissed the private plaintiffs' Supremacy Clause claim. But the court denied the motion to dismiss their Fourth Amendment claim, rejecting defendants' standing and sovereign immunity arguments. Governor Abbott appealed only the district court's order dealing with the private plaintiffs' claims. The United States did not file a brief before this court. And Director McCraw did not join the appeal. Accordingly, in this interlocutory appeal, the only questions properly before us are whether the private plaintiffs have Article III standing to bring their Fourth Amendment claim against Governor Abbott and whether *Ex parte Young*, 209 U.S. 123 (1908), permits this suit against him.[2] *See Whole Woman's Health v. Jackson*, 595 U.S. 30, 37–39 (2021). Because our holding on sovereign immunity is sufficient to eliminate federal jurisdiction, we do not reach the issue of whether the individual plaintiffs have Article III standing to sue the Governor. *See Sinochem Int'l Co. v. Malay. Int'l Shipping*, 549 U.S. 422, 431 (2007).

## II.

*Ex parte Young* does not afford plaintiffs relief against the Governor. That is because (A) plaintiffs cannot satisfy *Ex parte Young*'s requirements;

---

[2] Private plaintiffs brought their lawsuit under 42 U.S.C. § 1983, not *Ex parte Young*. The lawsuit was brought against Governor Abbott in his official capacity, however, thus implicating the Eleventh Amendment and state sovereign immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984). Section 1983 obviously does not abrogate that constitutional immunity. *See Quern v. Jordan*, 440 U.S. 332, 341 (1979). To pursue their § 1983 claims, plaintiffs must rely on the narrow exception to state sovereign immunity provided in *Ex parte Young*. *See Pennhurst*, 465 U.S. at 102–03.

No. 22-50212

(B) our precedent is consistent with this outcome; and (C) Texas Government Code § 411.012 does not compel the opposite result.

## A.

Plaintiffs cannot sue the Governor under *Ex parte Young*. Sovereign immunity forbids suits against a State and its officers in their official capacities. *See Fitts v. McGhee*, 172 U.S. 516, 524–27 (1899). But since the Founding, the Supreme Court has allowed some suits against state officers to proceed. *See, e.g.*, *Osborn v. Bank of U.S.*, 22 U.S. (9 Wheat.) 738, 857 (1824); *Davis v. Gray*, 83 U.S. (16 Wall.) 203, 220–21 (1872). Albeit not consistently. *See, e.g.*, *Governor of Ga. v. Madrazo*, 26 U.S. (1 Pet.) 110, 123–24 (1828) ("[W]here the chief magistrate of a state is sued, not by his name, but by his style of office, and the claim made upon him is entirely in his official character, we think the state itself may be considered as a party on the record."); *Ex parte Ayers*, 123 U.S. 443 (1887); *Fitts*, 172 U.S. 516. That is, until *Ex parte Young*.

*Ex parte Young* "recognized a narrow exception" to sovereign immunity for "certain private parties to seek judicial orders in federal court preventing state executive officials from enforcing state laws that are contrary to federal law." *Whole Woman's Health*, 595 U.S. at 39. This narrow exception covers suits for prospective relief against state officers who "are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence" proceedings to enforce an unlawful act against certain affected parties. *See Ex parte Young*, 209 U.S. at 155–56. Otherwise, the suit "is merely making [the officer] a party as a representative of the state, and thereby attempting to make the state a party." *Id.* at 157; *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the [state governmental] entity." (citation omitted)).

No. 22-50212

Plaintiffs cannot satisfy these requirements to bring an *Ex parte Young* suit. That is because (1) the Governor is not charged with enforcement of the order; (2) plaintiffs identify no relevant, threatened future enforcement action; and (3) plaintiffs seek recourse for the Governor's past conduct.

1.

First, *Ex parte Young* only permits injunctions against state officials who "have some connection with the enforcement of the act," 209 U.S. at 157, or are "specially charged with the duty to enforce" the law at issue, *id.* at 158. The officer must have "the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014) (quotation omitted). After all, "[t]here is a wide difference between a suit against individuals, holding official positions under a state, to prevent them, under the sanction of an unconstitutional statute, from committing by some positive act a wrong or trespass, and a suit against officers of a state merely to test the constitutionality of a state statute." *Fitts*, 172 U.S. at 529–30.

Here, GA-37 expressly tasks someone other than the Governor with its enforcement. As we have said, where the challenged law "makes clear that [another agency] is the agency responsible for the [law's] administration and enforcement," only that agency is a proper defendant under *Ex parte Young*. *Morris*, 739 F.3d at 746; *see also City of Austin v. Paxton*, 943 F.3d 993, 998 (5th Cir. 2019); *Lewis v. Scott*, 28 F.4th 659, 664 (5th Cir. 2022) (holding that the challenged laws "themselves refute any notion that the Secretary enforces them" because they plainly task other officials with enforcement).

Those rules govern here. GA-37 provides:

I, Greg Abbott, Governor of Texas, by virtue of the power and authority vested in me by the Constitution and laws of the State of Texas, do hereby order the following on a statewide basis effective immediately:

No. 22-50212

> 1. No person, other than a federal, state, or local law-enforcement official, shall provide ground transportation to a group of migrants who have been detained by [U.S. Customs and Border Protection] for crossing the border illegally or who would have been subject to expulsion under [federal law].

> 2. *The Texas Department of Public Safety* (DPS) is directed to stop any vehicle upon reasonable suspicion of a violation of paragraph 1, and to reroute such a vehicle back to its point of origin or a port of entry if a violation is confirmed.

> 3. *DPS* is authorized to impound a vehicle that is being used to transport migrants in violation of paragraph 1, or that refuses to be rerouted in violation of paragraph 2.

Tex. Exec. Order GA-37, at 2 (emphasis added). Because GA-37 tasks DPS alone "with enforcing the challenged law," and DPS is a separate entity from the Governor, "our *Young* analysis ends" for the Governor. *City of Austin*, 943 F.3d at 998; *see also Morris*, 739 F.3d at 746.

Even if we looked beyond the plain text of GA-37, plaintiffs identify no law that gives the Governor the particular duty to enforce this order. They point to Texas Government Code §§ 411.012, 418.011, 418.012, 418.015(c), 418.018(c), and 437.002(a). None gives him a duty to enforce this order. *See* Tex. Gov't Code § 411.012 ("The governor may assume command and direct the activities of the commission and [DPS] during a public disaster . . . ."); *id.* § 418.011 (providing that the Governor "is responsible for meeting . . . the dangers to the state and people presented by disasters"); *id.* § 418.012 ("[T]he governor may issue executive orders, proclamations, and regulations and amend or rescind them."); *id.* § 418.015(c) (designating the Governor "commander in chief of state agencies, boards, and commissions having emergency responsibilities" during disasters); *id.* § 418.018(c) ("The governor may control ingress and egress to and from a disaster area and the movement of persons and the occupancy of premises in the area."); *id.* §

No. 22-50212

437.002(a) ("The governor is the commander-in-chief of the Texas military forces, except any portion of those forces in the service of the United States."). "As a result, Governor [Abbott] is not a proper defendant." *Morris*, 739 F.3d at 746.

2.

Second, *Ex parte Young*'s narrow exception traditionally applies to suits against defendants "who threaten and are about to commence proceedings, either of a civil or criminal nature." *Ex parte Young*, 209 U.S. at 156; *see also Whole Woman's Health*, 595 U.S. at 47–48 (only allowing suits to proceed against licensing officials who have a statutory duty to institute disciplinary actions); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 382 (1992); *Prentis v. Atl. Coast Line Co.*, 211 U.S. 210 (1908). And these traditional principles constrain us. *See Whole Woman's Health*, 595 U.S. at 44. The idea that the Governor himself has threatened and is about to pull over plaintiffs and initiate criminal proceedings merely by issuing GA-37 is fanciful. Plaintiffs do not even raise a "credible threat" that the Governor will institute such an action. *Id.* at 47; *see also Younger v. Harris*, 401 U.S. 37, 42 (1971) ("[Plaintiffs] do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible."). His issuance of GA-37 and his public statements cannot "establish[] authority to enforce a law, or the likelihood of his doing so, for *Young* purposes." *Tex. Democratic Party v. Abbott (TDP II)*, 978 F.3d 168, 181 (5th Cir. 2020) (quoting *In re Abbott*, 956 F.3d 696, 709 (5th Cir. 2020), *vacated on other grounds by Planned Parenthood Ctr. for Choice v. Abbott*, 141 S. Ct. 1261 (2021)).

True, plaintiffs need not show that the Governor, like Attorney General Young, is so intent on bringing enforcement proceedings that he has, in violation of a court-issued injunction, obtained and served upon an individual plaintiff a court order mandating compliance with an allegedly

No. 22-50212

unconstitutional state law; and only a stint in federal prison in contempt of court can stop him from instituting enforcement proceedings. *See Ex parte Young*, 209 U.S. at 126–27, 134; *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 254 (2011). But plaintiffs do need to identify at least some enforcement action that the Governor will initiate for this court to enjoin. *See Whole Woman's Health*, 595 U.S. at 43. After all, we can only "enjoin named defendants from taking *specified* unlawful actions." *See id*. at 44 (emphasis added).

Plaintiffs cannot identify such an action. The order plainly delegates all remaining enforcement discretion to DPS. It is DPS who must determine whether "reasonable suspicion" exists to stop a vehicle, DPS who must determine if a violation has occurred, and DPS who must then decide whether to reroute or impound a vehicle. Tᴇx. Exᴇᴄ. Oʀᴅᴇʀ GA-37, at 2. And as Director McCraw testified, it is DPS who has the discretion to draft specific procedures to "govern enforcement of the order" before it will commence enforcement. ROA.169. The Governor has asserted no ongoing authority over DPS. Plaintiffs' reference to his enforcement of other orders in the past does not prove that he has or is likely to do the same here. *See City of Austin*, 943 F.3d at 1002. And any "vague allegation[s]" that the Governor might take control of DPS, strip away DPS's discretion, direct the actions of DPS troopers, or enforce the law himself have no factual support. *Boise Artesian Hot & Cold Water Co. v. Boise City*, 213 U.S. 276, 285 (1909). So any enforcement injury at his hands is a "conjectural injury [that] cannot warrant equitable relief." *Morales*, 504 U.S. at 382.

## 3.

Third, *Ex parte Young* only affords prospective relief to stop future harms. *See Va. Off. for Prot. & Advoc.*, 563 U.S. at 255; *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (requiring that the complaint allege that the defendant is engaging in an "ongoing violation of

federal law and seeks relief properly characterized as prospective" (quotation omitted)); *Papasan v. Allain*, 478 U.S. 265, 277–78 (1986) (noting a mere showing that a "federal law has been violated at one time or over a period of time in the past" is insufficient to bring an *Ex parte Young* suit). *Ex parte Young* cannot be used to attack the Governor's *past* actions. And even assuming the Governor has directed DPS to pull over plaintiffs via this Executive Order, that instruction is in the past. DPS alone will enforce the order in the future. Relief against the Governor's issuance of the order is purely retrospective, plainly falls outside the bounds of *Ex parte Young*, and hence is barred by the State's sovereign immunity. *See Verizon Md., Inc.*, 535 U.S. at 645–46; *Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 473 (5th Cir. 2020) (en banc) (holding that "voiding" a state order "is quintessentially retrospective and thus out of bounds under *Young*" (quotation omitted)).

## B.

This application of *Ex parte Young* is consistent with our court's precedent. We have held multiple times that parties cannot bring pre-enforcement challenges against the Governor when he merely issues executive orders or proclamations under the Texas Disaster Act. *See, e.g.*, *TDP II*, 978 F.3d at 180; *Mi Familia Vota v. Abbott*, 977 F.3d 461, 467 (5th Cir. 2020); *Tex. Democratic Party v. Abbott (TDP I)*, 961 F.3d 389, 400 (5th Cir. 2020); *In re Abbott*, 956 F.3d at 709.

*Mi Familia Vota* is on point. In that case, Governor Abbott issued an executive order, GA-29, requiring masks in certain public places pursuant to his authority to issue executive orders during disasters under Texas Government Code § 418.012—the same statutory provision at issue in this case. *See Mi Familia Vota*, 977 F.3d at 464, 467. We held that plaintiffs could not sue the Governor to enjoin enforcement of GA-29 because *Ex parte Young* only permits suits against state officials who have "some connection with the

enforcement" of the allegedly unconstitutional law. *Id.* at 467 n.17 (quoting *Ex parte Young*, 209 U.S. at 157). Such connection was noticeably absent in *Mi Familia Vota*. We held that any statutory authority the Governor had to issue the executive order did not include "the power to enforce it." *Ibid.* (citation omitted). Rather, "[e]nforcement actions would be undertaken by local authorities," so only those officials could be sued. *Ibid.*; *see also In re Abbott*, 956 F.3d at 709 (same); *Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669, 672 (5th Cir. 2022) (holding the Texas Secretary of State was not a proper defendant because "enforcement of HB 25 [fell] to local election officials"); *Lewis*, 28 F.4th at 664 (similar). There's no daylight between *Mi Familia Vota* and this case. Both involve the Texas Disaster Act, executive orders, and lower-tier officials charged with enforcement. And the plaintiffs have not shown that the Governor did anything more than promulgate GA-37. Without more, this case is foreclosed by *Mi Familia Vota*.

## C.

The plaintiffs attempt to sidestep all of this by claiming that GA-37 is different. *See* Red Br. 11–16, 19–23. Specifically, the plaintiffs point to § 411.012 of the Texas Government Code, which is mentioned nowhere in GA-37. Still, the plaintiffs claim that § 411.012 gives the Governor the power to commandeer DPS during a disaster; that the Governor could exercise that power; that he could "granularly" exercise it to order arrests for unspecified violations of GA-37, Red Br. 2; and that those perhapses and maybes combine to make Governor Abbott uniquely amenable to suit under *Ex parte Young*.

We are unpersuaded. First, § 411.012 does not imbue the Governor with the "*particular* duty to enforce" the Executive Order. *Tex. All. for Retired Ams.*, 28 F.4th at 672 (emphasis added) (quotation omitted). Section 411.012 says the Governor "*may* assume command and direct the activities of" DPS in a disaster. Tex. Gov't Code § 411.012 (emphasis

added). The Governor does not automatically take control of DPS whenever he issues a disaster declaration. *See Biden v. Texas*, 142 S. Ct. 2528, 2541 (2022) ("The statute says 'may.' And 'may' does not just suggest discretion, it *clearly* connotes it." (emphasis in original and quotation omitted)). Thus, § 411.012 does not vest the Governor with the particular duty to commandeer DPS to enforce the order in question.

Second, even if the Governor had a particular duty to enforce GA-37 by commandeering DPS, he has not "demonstrated [a] willingness to exercise that duty." *City of Austin*, 943 F.3d at 999 (quotation omitted). The Governor only issued the Executive Order. And we know from *Mi Familia Vota* and *In re Abbott* that the Governor's mere issuance of an executive order is not enough to sue him, regardless of who is on the receiving end of that order.

Third, the Governor's enforcement directive to DPS should have been sufficient to remove the Governor from this suit. As noted above, when a challenged law tasks another agency with enforcement, our *Ex parte Young* inquiry ends. *See Morris*, 739 F.3d at 746; *City of Austin*, 943 F.3d at 998. And here, GA-37 specifies that another agency—DPS—"is directed" to enforce the order. Tex. Exec. Order GA-37, at 2.

Fourth, if the plaintiffs want to show that the Governor silently invoked § 411.012 and implicitly commandeered a state agency, they must plead facts to support that inference. *See City of Austin*, 943 F.3d at 1001–02. Plaintiffs have not met their burden. To the contrary, DPS Director McCraw attested that the Governor has not even communicated with DPS about GA-37—much less taken control of DPS. And as Director McCraw noted, DPS retains the "responsibility to draft, design, and implement procedures for enforcement in response to executive orders [like GA-37] that involve DPS," and DPS "intends to draft procedures to govern enforcement of the order"

No. 22-50212

before it commences any enforcement actions. ROA.168–69. Since "GA-37 tasks DPS with enforcement of the order," DPS has discretion over how the order will be enforced. ROA.169. Thus, the facts do not support this assumption-of-power theory.[3]

\*    \*    \*

Given our constitutionally limited role to adjudicate the "Cases" and "Controversies" before us, U.S. Const. art. III, § 2, we decide this case as we have decided its predecessors: Sovereign immunity bars the private plaintiffs' suit against the Governor.

Accordingly, we REVERSE and REMAND with instructions to DISMISS the plaintiffs' suit against the Governor.

---

[3] For this reason, we decline plaintiffs' alternative suggestion that we remand for a jurisdictional fishing expedition into the Governor's relationship with DPS during a declared disaster.

No. 22-50212

Carl E. Stewart, *Circuit Judge*, dissenting:

With great respect to my colleagues, I am unpersuaded by Governor Abbott's invocation of sovereign immunity within the unique context of this appeal.[1] Therefore, I respectfully dissent for the reasons given below.

## I.

The Texas Legislature passed the Texas Disaster Act of 1975 and granted the Governor of Texas broad emergency powers to direct resources and state agencies during declared emergencies and natural disasters.[2] The Governor's proclamations and executive orders issued pursuant to the Disaster Act "have the force and effect of law."[3] Governor Abbott declared a state of disaster due to the COVID-19 pandemic in March of 2020 and renewed the proclamation each month until June of 2023.[4] On May 31, 2021, Governor Abbott declared an immigration disaster in Texas's counties along the U.S.-Mexico border.[5] His border-security proclamation specifically cited

---

[1] This court has consistently noted that there is "significant overlap between Article III jurisdiction, *Ex parte Young*, and equitable relief." *Air Evac Ems, Inc. v. Tex. Dep't of Ins.*, 851 F.3d 507, 520 (5th 2017) (quoting *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 n.5 (5th Cir. 2015)).

[2] *See generally* Tex. Gov't Code ch. 418.

[3] *Id.* at § 418.012. Absent a disaster, the Governor's powers are strictly cabined by the Texas Constitution. *See generally*, A.J. Thomas Jr. & Ann Van Wynen Thomas, *The Texas Constitution of 1876*, 35 Tex. L. Rev. 907, 914 (1957).

[4] *See* Patrick Svitek, *Gov. Greg Abbott says he won't renew his COVID-19 disaster declaration later this week*, Tex. Trib., June 12, 2023, https://www.texastribune.org/2023/06/12/greg-abbott-covid-disaster-renew/.

[5] *See* Proclamation by the Governor of the State of Texas (May 31, 2021), https://gov.texas.gov/uploads/files/press/DISASTER_border_security_IMAGE_05-31-2021.pdf [https://perma.cc/N5UT-PT9Y]. The Governor renewed this declaration on June 11. *See* Proclamation by the Governor of the State of Texas (June 11, 2023), https://gov.texas.gov/uploads/files/press/DISASTER_border_security_renewal_IMAGE_06-11-2023.pdf [https://perma.cc/E52M-U5UJ].

No. 22-50212

ongoing criminal activity arising out of "the ongoing surge of individuals unlawfully crossing the Texas-Mexico border."[6] Both disaster declarations were followed by numerous executive orders.

One of the many orders that originated from these disaster declarations is Executive Order GA-37 ("GA-37"), titled "Relating to the transportation of migrants during the COVID-19 disaster."[7] On July 28, 2021, the Governor issued GA-37 in response to the influx of unauthorized migrants crossing into the Texas border counties. It purports to limit civilian assistance to certain groups of noncitizens by prohibiting them from transporting individuals who may be unauthorized migrants. The plaintiffs allege that the order subjects drivers to seizures in the form of prolonged investigatory stops and/or the possible impounding of their vehicle. In GA-37, Governor Abbott orders that:

> 1. No person, other than a federal, state, or local law-enforcement official, shall provide ground transportation to a group of migrants who have been detained by [Customs and Border Protection] for crossing the border illegally or who would have been subject to expulsion under the Title 42 order.[8]

---

[6] *See* Proclamations, *supra* note 5.

[7] Tex. Exec. Order No. GA-37 (July 28, 2021), https://gov.texas.gov/uploads/files/press/EO-GA-37_transportation_of_migrants_during_COVID_IMAGE_07-28-2021.pdf [https://perma.cc/Z85K-5KEX].

[8] The "Title 42 order" referenced here was issued by the Centers for Disease Control and Prevention. It "suspends the introduction of certain persons from countries where an outbreak of a communicable disease exists." *See* Order Suspending Introduction of Certain Persons From Countries Where a Communicable Disease Exists, 85 Fed. Reg. 17,060 (Mar. 26, 2020).

No. 22-50212

2.   The Texas Department of Public Safety (DPS) *is directed* to stop any vehicle upon reasonable suspicion of a violation of paragraph 1, and to reroute such a vehicle back to its point of origin or a port of entry if a violation is confirmed.

3.   DPS *is authorized* to impound a vehicle that is being used to transport migrants in violation of paragraph 1, or that refuses to be rerouted in violation of paragraph 2.

TEX. EXEC. ORDER NO. GA-37 (emphasis added). The plaintiffs, two nongovernmental organizations and a retired civil rights lawyer who engage in mutual aid for unauthorized migrants, filed suit alleging that GA-37 violates the Fourth Amendment. Upon Governor Abbott's motion to dismiss, the district court found that the plaintiffs had standing to sue and were entitled to the *Ex parte Young* exception from sovereign immunity based on the facts alleged.[9] *See* 209 U.S. 123, 155–56 (1908).

## II.

The doctrine of sovereign immunity, derived from the Eleventh Amendment, prohibits the advancement of lawsuits against a State and its officers in their official capacities without their consent. *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011). However, the Supreme Court created an exception to sovereign immunity in *Young*. 209 U.S. at 155–56. Through this exception, plaintiffs may bring "suits for injunctive or declaratory relief against individual state officials acting in violation of federal law." *Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013). An appropriate defendant in such a suit is a state official that has some connection to the challenged law's enforcement. *See Young*, 209 U.S. at 155–57.

---

[9] *See United States v. Texas*, Cause No. EP-21-CV-173-KC, 2022 WL 868717, at *6–8 (W.D. Tex. Feb. 17, 2022).

No. 22-50212

Notably, this court has determined that "[t]he required connection is not merely the general duty to see that the laws of the state are implemented, but the particular duty to enforce the [law] in question and a demonstrated willingness to exercise that duty." *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014). Our en banc court has further explained that the *Young* exception may apply where "the defendant state official . . . at least [has] the ability to act." *Okpalobi v. Foster*, 244 F.3d 405, 421 (5th Cir. 2001). Other panels of this court have established that plaintiffs satisfy this threshold where a "scintilla of 'enforcement' by the relevant state official with respect to the challenged law" exists. *City of Austin v. Paxton*, 943 F.3d 993, 1000 (5th Cir. 2019). Furthermore, "[t]he text of the challenged law need not actually state the official's duty to enforce it" for the *Young* exception to apply. *Id.* at 997–98. However, we have also previously determined that the threshold to apply the *Young* exception is not satisfied where the plaintiffs only allege that the Governor promulgated the challenged executive order. *See Mi Familia Vota v. Abbott*, 977 F.3d 461, 469 (5th Cir. 2020). Our panels have reasoned that although the Governor had the authority to issue those specific executive orders, he generally lacked the authority to enforce them through that act alone. *See id.* In my view, however, the specific executive order *and* the relevant provisions of the Texas Government Code at issue in this case surpass the mere "scintilla of 'enforcement'" required by our jurisprudence.

No. 22-50212

### III.

The relevant inquiries here are whether, accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs, Governor Abbott (1) is able to enforce GA-37 and (2) is willing to do so. *See Morris*, 739 F.3d at 746. My conclusion is that the answer to both inquiries is yes. Governor Abbott argues that no provision of the Texas Government Code bestows on him the duty to enforce GA-37. However, Texas Government Code § 411.012 provides him the authority to "assume *command* and *direct* the activities of the [public service] commission and [DPS] during a public disaster." At the very least, this puts him on equal footing with the Director of DPS to command DPS officers to carry out his policies set under his emergency powers pursuant to the Disaster Act.[10] In actuality, the Governor's powers are at their zenith during disasters.

In exercising these heightened powers, Governor Abbott issued GA-37. The order's plain language leaves little to the imagination in terms of enforcement. In Paragraphs 2 and 3, the Governor directs, or more befittingly, compels, DPS officers to take the specific actions that the plaintiffs allege constitute violations of the Fourth Amendment. As stated above, the plaintiffs need only demonstrate at this stage that Governor Abbott has the authority to enforce the alleged unconstitutional order and a willingness to do so. *See Okpalobi*, 244 F.3d at 421; *City of Austin*, 943 F.3d at 1002. Sections 418.012, 418.015(c), and 418.018(c) of the Texas Government Code detail the Governor's authority during declared disasters to command

---

[10] *See* Tex. Exec. Order No. GA-37, p. 2. Furthermore, Governor Abbott assumes a far more powerful position as he has the authority to command and direct the DPS and the Public Service Commission that oversees it. The Director of the DPS is subject to removal by the Commission. *See* Tex. Gov't Code § 411.005 ("The director serves until removed by the commission.").

No. 22-50212

DPS and his authority to control the ingress or egress of persons through the area of a declared disaster. When read together, these provisions demonstrate that he has a sufficient connection to the enforcement of the alleged unconstitutional order to merit the application of the *Young* exception. This is wholly unlike the case of *Okpalobi v. Foster*, where the Governor was "powerless to enforce [the challenged statute] against the plaintiffs" because the statute only provided a private civil right of action against doctors that carried out abortions. 244 F.3d at 426; *see also id.* at 421–23. Furthermore, none of our other cases regarding the Governor's prior disaster executive orders implicated his direct exercise of the command authority over the officers and agents that carry out his policies.

For instance, this court held that Governor Abbott did not play any part in enforcing Executive Order GA-29, the COVID-19 mask mandate at issue in *Mi Familia Vota v. Abbott*. *See* 977 F.3d at 467–69. There, several nongovernmental organizations sued Governor Abbott and the Texas Secretary of State, alleging that Executive Order GA-29's mask mandate exemption as to polling centers and several provisions of the Texas Election Code created voting conditions that infringed on Black and Latino communities' right to vote.[11] In his mask mandate order, Governor Abbott provided that local officials "*can* and *should* enforce this executive order."[12] Reviewing the district court's dismissal of the organizations' claims, the panel determined that "[t]here is no suggestion in any statutes or regulations that Governor Abbott has authority to enforce or [] play[s] a role in enforcing" GA-29. *Mi Familia Vota*, 977 F.3d at 467–68. Thus, the panel

---

[11] *Mi Familia Vota*, 977 F.3d at 463–66.

[12] Tex. Exec. Order No. GA-29 (July 2, 2020), https://gov.texas.gov/uploads/files/press/EO-GA-29-use-of-face-coverings-during-COVID-19-IMAGE-07-02-2020.pdf [https://perma.cc/T6GA-RKJQ].

concluded that Governor Abbott was immune to suit because Texas law vested local officials with enforcement of the contested election code provisions.[13]

Several key distinctions exist between the challenged orders in *Mi Familia Vota* and the instant case. First, none of the election code provisions at issue in *Mi Familia Vota* imbued the Governor with any enforcement powers.[14] None of the challenged provisions even referenced the Governor. Governor Abbott's ability to compel DPS to enforce state laws removes this case from the class of cases where we have held that the Governor was immune from suit.[15] Second, the *Mi Familia Vota* plaintiffs only argued that Texas Government Code §§ 418.011 and 418.012 provided Governor Abbott with sufficient connection to the enforcement of the alleged unconstitutional executive order. Here, Plaintiffs cogently allege that sections 418.011, 418.012, 418.015(c), and 418.018(c) shroud the Governor with the authority to enforce GA-37. Third, Governor Abbott's abdication of enforcement authority to local officials in *Mi Familia Vota* was clear from his request that

---

[13] *Id.* at 469. The same was true in *Texas Democratic Party v. Abbott*, where this court found that there were no Election Code provisions "that outline[] a relevant enforcement role for Governor Abbott." 961 F.3d 389, 400 (5th Cir. 2020); *see also id.* at 401 ("[A]s discussed above, because the Governor 'is not statutorily tasked with enforcing the challenged law[s], . . . our *Young* analysis" ends).

[14] *See* Tex. Election Code §§ 43.007, 64.009, 85.062, 85.063.

[15] *Mi Familia Vota*, 977 F.3d at 467–68. *But see Okpalobi*, 244 F.3d at 421 (holding that *Young* applies where "the defendant state official . . . at least [has] the ability to act"); *cf. Doyle v. Hogan*, 1 F.4th 249, 256 (4th Cir. 2021) ("Even so, we could find the required connection [under *Ex parte Young*] if the Governor is able to *direct* Maryland's Secretary of Health to enforce the Act by initiating a disciplinary proceeding."); *Tex. All. for Retired Ams. v. Scott*, 28 F.4th 659, 672 (5th Cir. 2022) ("If the official does not compel or constrain anyone to obey the challenged law, enjoining that official could not stop any ongoing constitutional violation.").

No. 22-50212

local officials "can and should enforce" the executive order.[16] Here, Governor Abbott has directly exercised his commander-in-chief powers over DPS by compelling its officers to "stop any vehicle upon reasonable suspicion of a violation" of the conditions prescribed in the order.[17]

This is a case where Governor Abbott, like the Director of DPS, is sufficiently related to the enforcement of GA-37. And the pronouncements he made in GA-37, taken with Plaintiffs' specific allegations about their operations and the threatened impact which the Governor's order presents, are sufficient to demonstrate his willingness to compel DPS to enforce the order. Under these circumstances, Governor Abbott has exhibited more than "some scintilla of 'enforcement'" of GA-37. *City of Austin*, 943 F.3d at 1002. In sum, I would hold that the *Young* exception applies to Governor Abbott in the same manner as it does to the Director of DPS, Director McCraw. Neither side disputes that the plaintiffs' claims against Director McCraw are subject to the *Young* exception. Thus, the plaintiffs are entitled to the exception even though Governor Abbott has directed DPS to implement certain enforcement measures in GA-37 because the Governor maintains an ongoing statutory authority to enforce the order.

## IV.

For the foregoing reasons, in addition to the reasons the district court provided in its well-reasoned opinion, I dissent.[18]

---

[16] *See* Tex. Exec. Order GA-29.

[17] Tex. Exec. Order GA-37, p. 2.

[18] *See Texas*, 2022 WL 868717, at *4–6 (holding that the plaintiffs have sufficiently alleged Art. III standing); *Id.* at *6–8 (determining that Governor Abbott has the authority to enforce the alleged unconstitutional order and a demonstrated willingness to exert that authority based on his statements in the Preamble of GA-37 and Tex. Gov't Code §§ 418.012, 418.018(c)).